Russell HENDERSON, Mildred E. Chambers and Charles E. Moore, Individually and as Class Representatives, Plaintiffs–Appellants,

v.

SCIENTIFIC–ATLANTA, INC., Defendant–Appellee.

No. 91–8938.

United States Court of Appeals, Eleventh Circuit.

Sept. 11, 1992.

C. Neal Pope, Max R. McGlamry, Paul Kilpatrick, Jr., Columbus, Ga., Michael L. McGlamry, Steven W. Saccoccia, Wade H. Tomlinson, III, Atlanta, Ga., Richard H. Gill, Copeland, Franco, Screws & Gill, Montgomery, Ala., William J. Cornwell, Pope, McGlamry, Kilpatrick & Morrison, Charles A. Presto, Atlanta, Ga., for plaintiffs-appellants.

Susan A. Cahoon, Mary Lillian Walker, Stephen E. Hudson, Kilpatrick & Cody, Atlanta, Ga., for defendant-appellee.

Barbara C. Biddle, Scott R. McIntosh, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for U.S. Dept. of Justice.

Before COX, Circuit Judge, CLARK,* and WELLFORD,** Senior Circuit Judges.

COX, Circuit Judge:

The Plaintiffs filed a securities fraud class action against Scientific–Atlanta, Inc. (Scientific) in the Northern District of Georgia. Shortly before trial, the Supreme Court announced its decisions in *Lampf,*

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

*Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), which changed the applicable statute of limitations for Plaintiffs' suit. In light of these decisions, the district court granted Scientific's motion for summary judgment on the ground that the action was time-barred. On appeal, Plaintiffs argue that section 27A of the Securities Exchange Act of 1934, which was recently added to the Act, requires the district court to reinstate their action. Scientific, on the other hand, contends that section 27A is unconstitutional. We conclude that section 27A is constitutional and controlling. Accordingly, we vacate the judgment and remand with instructions to reinstate the action.

### I. Facts and Procedural History

In September 1988, Russell Henderson filed this action against Scientific on behalf of himself and some 40,000 other investors who purchased Scientific's common stock during the time period beginning on January 1, 1981, and ending on August 31, 1983. The complaint asserts federal claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.10b–5, as well as pendent state-law claims for fraud and misrepresentation. Two other individuals joined the suit as named plaintiffs and class representatives. The class was certified in August 1989. The Plaintiffs allege that they lost over $370 million due to Scientific's fraudulent omissions, misstatements, and misrepresentations that artificially inflated the price of its stock. Scientific denies all allegations of wrongdoing.

Scientific moved for summary judgment on the ground that the Plaintiffs' action was time-barred. Neither section 10(b) nor rule 10b–5 contains a statute of limitations. At that time, for implied private causes of action arising under section 10(b), the law of this circuit directed courts to "borrow" a statute of limitations from state law. *See Smith v. Duff and Phelps, Inc.,* 891 F.2d 1567, 1569–70 (11th Cir.1990). In this case, the district court borrowed from Georgia law and applied a two-year statute of limitations running from the date of discovery. The court concluded that the Plaintiffs' action was timely and rejected Scientific's motion for summary judgment.

The district court then set the case for trial. The parties were still awaiting trial on June 20, 1991, when the Supreme Court announced its decisions in *Lampf* and *Beam.* In *Lampf,* the Supreme Court rejected the practice of borrowing state statutes of limitations for private causes of action under section 10(b). *Lampf,* —— U.S. at ——, 111 S.Ct. at 2781–82. Instead, the Court held that such actions are subject to a federal one-year/three-year statute of limitations; a private action under section 10(b) must be brought within one year of discovery but no more than three years after the date of the alleged violation. In announcing this new rule, the Supreme Court held that the rule should be retroactively applied to the parties before it and dismissed the plaintiffs' suit as time-barred. *Id.*

In *Beam,* which was announced on the same day as *Lampf,* the Supreme Court held that when the Court applies a new rule to the litigants in a particular case, that rule must be retroactively applied to all other similarly situated litigants. *Beam,* —— U.S. at ——, 111 S.Ct. at 2441. This circuit has recognized that *Beam* requires retroactive application of the new statute of limitations rule announced in *Lampf. Lufkin v. McCallum,* 956 F.2d 1104, 1108 (11th Cir.1992).

In light of *Lampf* and *Beam,* Scientific again moved for summary judgment on the ground that the Plaintiffs' action was time-barred. The district court agreed that the action was not timely under the new statute of limitations rule announced in *Lampf.* Accordingly, the district court granted summary judgment in favor of Scientific on the federal securities law claims. The court also dismissed the pendent state-law fraud and misrepresentation claims without prejudice. The Plaintiffs then filed notice of appeal to this court.

■ While this appeal was pending, Congress enacted the Federal Deposit Insurance Corporation Improvement Act of 1991. Section 476 of that Act amended the Securities Exchange Act of 1934 by adding the following provision:

> Sec. 27A. (a) Effect on Pending Causes of Action.—The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
>
> (b) Effect on Dismissed Causes of Action.—Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—
>
> > (1) which was dismissed as time barred subsequent to June 19, 1991, and
> >
> > (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,
>
> shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Pub.L. No. 102–242, § 476, 105 Stat. 2236, 2387 (1991). We decline to remand this case to the district court to consider the effect of section 27A because the issue is solely a question of law and does not require any additional fact-finding. Moreover, both the Plaintiffs and Scientific have had the opportunity in their briefs and at oral argument to discuss the effect of section 27A on the applicable statute of limitations in this case. *See Howard v. Haddad,* 962 F.2d 328, 330 (4th Cir.1992) (declining to remand case for consideration of the statute of limitations under *Lampf* because the parties fully discussed the issue in their appellate briefs and at oral argument).[1]

## II. Issues on Appeal

1. Whether section 27A of the Securities Exchange Act of 1934 affects the applicable statute of limitations and requires the district court to reinstate the action.

2. Whether section 27A violates the doctrine of separation of powers.

3. Whether section 27A violates the Due Process Clause of the Fifth Amendment.

## III. Contentions of the Parties

Scientific contends that the district court's grant of summary judgment should be affirmed. It argues that we should interpret the statute of limitations in section 27A of the Securities Exchange Act of 1934 in a manner consistent with the Supreme Court's decision in *Lampf.* Such an interpretation would avoid the necessity of deciding whether section 27A is constitutional. In the alternative, Scientific claims that section 27A is unconstitutional because it violates both the doctrine of separation of powers embodied in Article III of the Constitution and the Due Process Clause of the Fifth Amendment.

The Plaintiffs argue that section 27A makes their action timely because it reinstates the statute of limitations in existence on June 19, 1991. Contrary to Scientific's suggestion, this court cannot interpret the statute of limitations in section 27A in a manner consistent with the Supreme Court's decision in *Lampf.* In addition, the Plaintiffs and the United States contend that section 27A is constitutional because it neither contravenes separation of powers principles nor violates the Due Process Clause of the Fifth Amendment.[2]

## IV. Standards of Review

■ We review the district court's grant of summary judgment *de novo. Twin Construction v. Boca Raton, Inc.,* 925

---

**1.** Because Scientific contends that section 27A is unconstitutional, the United States intervened as a matter of right. *See* 28 U.S.C. § 2403(a).

**2.** The Plaintiffs also contend that the district court's grant of summary judgment in favor of ·

Scientific was reversible error on grounds unrelated to section 27A. Because we conclude that section 27A is controlling, we do not address these alternative arguments.

F.2d 378, 381 (11th Cir.1991). The constitutionality of section 27A was not addressed by the district court. The constitutional issue is subject to plenary consideration by this court.

## V. Discussion

### A. *Effect of Section 27A*

■ We begin by addressing Scientific's suggestion that we interpret section 27A of the Securities Exchange Act of 1934 in a manner consistent with the Supreme Court's decision in *Lampf*. *See Communications Workers v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988) (stating that courts should construe federal statutes to avoid serious constitutional questions if such a construction is "fairly possible"). "Nothing in Section [27A] precludes this Court from determining what the appropriate limitations period was for Section 10(b) in light of all the law that existed on June 19 and applying that law to plaintiffs." Appellee's Brief at 16. Scientific points out that other circuits had adopted a federal one-year/three-year statute of limitations as of June 19, 1991. It asks this court to *now* adopt such a statute as the law of the circuit as of June 19, 1991.

Such an action is foreclosed by section 27A itself. Section 27A requires us to apply "the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, *as such laws existed on June 19, 1991.*" Pub.L. No. 102–242, § 476, 105 Stat. 2236, 2387 (1991) (emphasis added). On June 19, 1991, the law in this circuit was that the statute of limitations for section 10(b) claims should be borrowed from state law. *Smith v. Duff and Phelps, Inc.,* 891 F.2d 1567,

1569–70 (11th Cir.1990) (rejecting the uniform federal statute of limitations adopted by other circuits). When Congress stated that the limitation period for these actions shall be the limitation period provided by the laws applicable in the jurisdiction as such laws existed on June 19, 1991, it must be presumed that Congress was aware of the law as it existed *in all the circuits* on that date. This court cannot simply overrule precedent after Congress has codified it.

### B. *Separation of Powers*

No court of appeals has yet addressed the constitutionality of section 27A.[3] The district courts that have considered this issue are divided. *Compare Bank of Denver v. Southeastern Capital Group, Inc.,* 789 F.Supp. 1092 (D.Colo.1992), *and TGX Corp. v. Simmons,* 786 F.Supp. 587 (E.D.La.1992) (declaring section 27A unconstitutional), *with Brown v. Hutton Group,* 795 F.Supp. 1307 (S.D.N.Y.1992), *and Bankard v. First Carolina Communications, Inc.,* No. 89–8571, 1992 WL 3694, 1992 U.S. Dist. LEXIS 53 (N.D.Ill. Jan. 3, 1992) (finding section 27A constitutional).

■ Scientific argues that section 27A violates the separation of powers doctrine because Congress "sought to render ... [*Lampf*] a nullity as a binding precedent on the lower federal courts...." Appellee's Brief at 20. Assuming this is true, we see nothing wrong in it. The *Lampf* Court was simply interpreting the Securities Exchange Act of 1934. If Congress disagrees with the Supreme Court's interpretation, it is free to amend the statute as it sees fit.[4]

---

**3.** In *Henley v. Slone,* 961 F.2d 23 (2d Cir.1992), for example, the Second Circuit declined to consider the constitutionality of section 27A until the district court determined on remand whether the Plaintiff's action would be timely under the new statute. In another decision, the Second Circuit observed, in dicta, that "[a]lthough the parties have not suggested that section 27A is unconstitutional, we are aware that several district courts have so held, but ... we are unimpressed by the cogency of their analysis." *Litton Industries v. Lehman Brothers Kuhn Loeb,* 967 F.2d 742, 751 n. 6 (2d Cir.1992). Ulti-

mately, however, the court declined to address the effect of *Lampf* and section 27A because the defendants had failed to raise the statute of limitations as a defense in the district court. *Id.* at 752.

**4.** Section 27A is a classic example of Congress's practice of "overruling" a statutory construction by the Supreme Court. *See also, e.g.,* H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 14, *reprinted in* 1991 U.S.C.C.A.N. 549, 552; H.R.Rep. No. 102–40(II), 102d Cong., 1st Sess. 1–3, *reprinted*

Indeed, this is how our federal system is designed to operate.

Scientific also argues that Congress did not seek to make new law by adopting section 27A, but rather attempted to force courts to reach an outcome which is contrary to the law.[5]  In *Robertson v. Seattle Audubon Society,* — U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), a unanimous Supreme Court squarely rejected this sort of argument.  In *Audubon,* various environmental organizations challenged the federal government's policy of allowing timber harvesting from old-growth forests in the Pacific Northwest.  In response, the United States Forest Service amended its regulations to restrict harvesting in certain areas.  The environmental groups filed suit, claiming that the new regulations were insufficient to protect the northern spotted owl.  The Washington Contract Loggers Association and others filed a separate suit, arguing that the regulations were too burdensome.  *Id.*

In response to the litigation, Congress enacted what is known as the Northwest Timber Compromise.  The Compromise both expanded and restricted harvesting in the thirteen national forests in Oregon and Washington and other public lands known to contain spotted owls.  The Compromise also provided that:

> The Congress hereby determines and directs that management of areas according to subsections (b)(3) and (b)(5) of this section on the thirteen national forests in Oregon and Washington and Bureau of Land Management lands in western Oregon known to contain northern spotted owls is adequate consideration for the purpose of meeting the statutory requirements that are the basis for the

consolidated cases captioned *Seattle Audubon Society, et al., v. F. Dale Robertson,* Civil No. 89–160 and *Washington Contract Loggers Assoc., et al., v. F. Dale Robertson,* Civil No. 89–99 (order granting preliminary injunction) and the case *Portland Audubon Society, et al., v. Manuel Lujan, Jr.,* Civil No. 87–1160–FR.

*Id.* — U.S. at ——, 112 S.Ct. at 1411 (quoting subsection (b)(6)(A) of the Northwest Timber Compromise).

When the case was first heard by the Ninth Circuit, the court struck down the statute as a violation of separation of powers.  *Seattle Audubon Society v. Robertson,* 914 F.2d 1311 (9th Cir.1990).  The Ninth Circuit held that the Compromise was unconstitutional because it "does not, by its plain language, repeal or amend the environmental laws underlying this litigation," but rather "directs the court to reach a specific result and make certain factual findings under existing law."  *Id.* at 1316.  The Supreme Court reversed, concluding that the Compromise did constitute a change in the law underlying the specified litigation: "[R]espondents argue that subsection (b)(6)(a) did not modify old requirements because it deemed compliance with new requirements to 'meet' the old requirements.  We fail to appreciate the significance of this observation."  *Audubon,* — U.S. at ——, 112 S.Ct. at 1414.  The Court noted that Congress could have amended the original statute directly but chose not to.  Instead, Congress decided that compliance with the special provision of the Compromise would be sufficient to satisfy the existing statute.  This had the effect of "modifying" the original statute under the

---

*in* 1991 U.S.C.C.A.N. 694–95 (noting that a primary purpose of the Civil Rights Act of 1991 was to overrule several Supreme Court decisions with which Congress disagreed).

**5.** Scientific argues that "Congress did not attempt to enact a statute of limitations for Section 10(b) claims or to provide new standards for the courts to apply in deciding what should be the source of law used in borrowing periods of limitations in the absence of an express statutory period.  Instead, Congress continued to ask the courts to make those judgments but endeav-

ored to direct them to reach a different result than the law otherwise required in determining the appropriate statute of limitations period for Section 10(b) claims. . . .  If the language of Section [27A(a)] compels such a result, it is difficult to conceive of a more intrusive invasion of the judicial power, in violation of the separation of powers principle.  For those reasons, this Court should hold that if Section [27A] requires such a result, it is unconstitutional."  *Appellee's Brief* at 20–21.

canon of statutory construction that specific provisions modify general ones. *Id.*

The Supreme Court also rejected the contention that the Compromise directed courts to decide cases in a specific way. It noted that the Compromise did not order courts to make any particular findings of fact. Nor did it "instruct the courts whether any particular timber sales would violate subsections (b)(3) and (b)(5)." *Id.* — U.S. at —, 112 S.Ct. at 1413. The Court also pointed out that the challenged language—"Congress hereby determines and directs"—is implicit in any act of Congress. "A statutory directive binds *both* the executive officials who administer the statute *and* the judges who apply it in particular cases—even if (as is usually the case) Congress fails to preface its directive with an empty phrase like 'Congress ... directs that.'" *Id.* — U.S. at —, 112 S.Ct. at 1414. In addition, the Supreme Court dismissed the fact that the Compromise mentioned specific pending cases by name. "To the extent that subsection (b)(6)(A) affected the adjudication of the cases, it did so by effectively modifying the provisions at issue in those cases." *Id.*

Scientific attempts to distinguish *Audubon* on the ground that the Compromise in that case had both retroactive and prospective effect whereas section 27A has only a retroactive effect. *See* Appellee's Supplemental Brief at 7–8. We fail to see the significance of such a distinction. The central issue is whether section 27A violates separation of powers principles by interfering with judicial decision-making. The presence of an additional prospective effect in no way lessens such interference if it exists at all. Accordingly, we conclude that *Audubon* is controlling in this case.

Like the Compromise at issue in *Audubon,* section 27A does implement a change in the law; it amends the Securities Exchange Act to provide the statute of limitations for private causes of action under section 10(b) that were filed by June 19, 1991. But Congress has not interfered with the judicial process. The Act does not require courts to make any particular findings of fact or applications of law to fact.

Any effect on pending cases is solely a result of a change in the underlying law. We therefore hold that section 27A does not violate the doctrine of separation of powers.

### C. *The Fifth Amendment*

Scientific's Fifth Amendment challenge to the Act is two-pronged: (1) the Act's retroactive application violates its right to due process because the Act's purpose is not furthered by rational means, and (2) the Act deprives Scientific of equal protection under the law (implicit in the Fifth Amendment's guarantee of due process) because the Act is not rationally related to the achievement of legitimate government purposes since it treats citizens of different circuits differently and distinguishes between persons who filed suit before June 19, 1991, and those who filed suit after that date. We address these two arguments in turn.

#### 1. Due Process

■ Scientific contends that section 27A is unconstitutional because it denies Scientific due process in violation of the Fifth Amendment. Scientific's argument is premised, at least in part, upon the fact that Congress's intent in enacting section 27A was to direct the outcome of pending litigation. The fact that it has an effect upon pending litigation does not constitute a due process violation. *See International Union of Electrical, Radio and Machine Workers v. Robbins & Myers,* 429 U.S. 229, 243–44, 97 S.Ct. 441, 450–51, 50 L.Ed.2d 427 (1976) (holding that revival by statute of an action which was already time-barred did not violate due process).

■ Scientific also maintains that the "statute makes no attempt to define what would be an appropriate limitations period and then to reinstate or otherwise preserve the pending causes of action of claimants who brought suit within that period of limitations." Appellee's Brief at 27. We disagree. Section 27A defines the appropriate statute of limitations for section 10(b) causes of action. Under the statute, the limitations period for an action filed by

June 19, 1991, will be the limitations period in effect on that date in that jurisdiction. For subsequent actions, the uniform one-year/three-year statute of limitations announced in *Lampf* will apply. Assuming that Congress approved of *Lampf*'s limitations period, there was no need for further action on the issue except to protect those lawsuits which had already been filed in reliance upon the old law. Contrary to Scientific's assertion, section 27A is a rational means of preserving those lawsuits which were pending prior to *Lampf*.

### 2. Equal Protection

█ Because section 27A does not affect a fundamental right or discriminate on the basis of a suspect classification, the statute is due to be upheld so long as it is rationally related to furthering a legitimate governmental interest. *See Vance v. Bradley*, 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979).

█ The purpose of section 27A is clear. Congress sought to reinstate those causes of action that were timely when filed, but which were subsequently rendered untimely by the Supreme Court's decision in *Lampf*. *See* Pub.L. No. 102–242, § 476, 105 Stat. 2236, 2387 (1991). *See also* 137 Cong.Rec. S18,624 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan) (noting that "*Lampf* changed the rules in the middle of the game for thousands of fraud victims who already had suits pending"); 137 Cong.Rec. S17,315 (daily ed. Nov. 21, 1991) (statement of Sen. Riegle) (stating that Congress "must take steps to protect those investors who had cases pending prior to [*Lampf*]"). Protecting these litigants from an unexpected change in the law is a legitimate governmental interest, and section 27A is rationally related to that end.

Scientific argues that section 27A "violates the requirements of equal protection implicit in the Fifth Amendment's guarantee of due process because it creates a legislative scheme under which liability depends on the defendant's residence or where it transacts business—factors that

bear no rational relationship to the goals of the 1934 Act or Section [27A]." Appellee's Brief at 23. This argument, however, misstates the effect of section 27A. Liability under the Securities Exchange Act of 1934 does not depend upon the defendant's residence or place of business. Rather, section 27A merely provides that the applicable statute of limitations, which is an affirmative defense, will vary with the jurisdiction in which suit is brought.

█ There is nothing irrational about varying the applicable statute of limitations for a cause of action from one jurisdiction to another. Indeed, as the Supreme Court noted in *Lampf*, "the usual rule [is] that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the *local* time limitation most analogous to the case at hand." *Lampf*, —— U.S. at ——, 111 S.Ct. at 2778 (emphasis added). Furthermore, in the case of section 27A, such a distinction was absolutely necessary because the purpose of the statute was to codify the law in the various circuits as it existed prior to *Lampf* in order to protect litigants' reliance.

Scientific also objects to the fact that section 27A applies only to cases which were filed no later than June 19, 1991. For cases filed after that date, courts must apply the uniform statute of limitations announced in *Lampf*. Again, such a distinction is rationally related to Congress's objective. Congress is not obligated to aid every potential litigant who may have been harmed by the change in the law following *Lampf*. It is not irrational for Congress to limit its remedy to those individuals who have gone so far as to file suit in reliance upon the existing statute of limitations. These individuals will suffer the most concrete injury because they have expended significant time and effort to bring their action, not to mention substantial funds for attorney's fees and court costs.[6]

---

**6.** The Plaintiffs estimate that they have invested more than $2 million and 10,000 hours of attor-ney time in this class action. Appellants' Brief at 8.

## VI. Conclusion

We hold that section 27A of the Securities Exchange Act of 1934 is constitutional. Under section 27A, the Plaintiffs' action is timely. Accordingly, the district court's grant of summary judgment is VACATED and the case is REMANDED with instructions to reinstate the action.

The district court dismissed the pendent state-law claims because of its holding that the federal claims were untimely. Therefore, the dismissal of the state-law claims is also VACATED.

The case is remanded to the district court for further proceedings.

VACATED and REMANDED WITH INSTRUCTIONS.

WELLFORD, Senior Circuit Judge, dissenting:

The majority is correct in concluding that *Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1569–70 (11th Cir.1990), established "that the statute of limitations for section 10(b) claims is the period that the forum state applies to the most closely analogous state claim." *Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), however, overruled *Smith* and established that § 10(b) "actions are subject to a federal one-year/three-year statute of limitations" as stated by the majority. This new statute of limitations established in *Lampf* is to be retroactively applied. *See Lampf*, —— U.S. at ——, 111 S.Ct. at 2781–82; *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *Lufkin v. McCallum*, 956 F.2d 1104 (11th Cir.1992). When the district court granted summary judgment for defendant based upon the *Lampf Beam* rationale as to limitations and retroactivity, it was correct in light of the then existing case law.

While plaintiffs' ensuing appeal was pending here, Congress enacted the FDIC Improvement Act of 1991 amending the Securities Exchange Act of 1934, and obviously intended to have "effect on pending private causes of action." The apparent legislative purpose of § 27A "was to return to the *status quo* as it existed prior to *Lampf*." Congress directed that the law that existed immediately before *Lampf* should be applied to pending cases, applying its own principles of retroactivity.

Scientific Atlanta argues that Congress' action violated its due process rights and its interests established under the *Lampf* rule. I concur with the majority in its analysis and rejection of the challenges based upon the Fifth Amendment.

Defendant also challenges the constitutionality of § 27A based upon the Separation of Power doctrine. A number of district courts have considered like challenges and have reached different results. All have recognized that a court should declare a congressional enactment unconstitutional only for the most compelling reasons. Nonetheless, courts have struck down congressional enactments for separation of powers violations. *See e.g., Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). Despite the careful and thoughtful reasoning of the majority in this difficult case, I am persuaded by the collective efforts of what appear to me to be a majority of district courts that have considered this issue.[1] I would find the

---

1. A partial list of district court cases that have determined § 27A to be unconstitutional follows:

    *Johnston v. CIGNA Corp.*, 789 F.Supp. 1098 (D.Colo.1992);

    *Bank of Denver v. Southeastern Capital Group, Inc.*, 789 F.Supp. 1092 (D.Colo.1992);

    *TGX Corp. v. Simmons*, 786 F.Supp. 587 (E.D.La.1992);

    *Mancino v. Int'l Tech. Corp.*, No. 89-7244-RMT, 1992 WL 114436 (C.D.Cal. Mar. 10, 1992);

    *In re Brichard Sec. Litig.*, 788 F.Supp. 1098 (N.D.Cal.1992);

    *Abrams & Wofsy v. Renaissance Investment Corp.*, Nos. 1:87-cv-1931-WCO, 1:87-cv-1962-WCO, 1:87-cv-2074-WCO, 1:87-cv-2454-WCO (N.D.Ga. July 21, 1992);

    *In re: Prudential-Bache Energy Income Partnerships Sec. Litig.*, No. 888, 1992 WL 142575 (M.D.La. June 9, 1992);

    *Rosenthal v. Dean Witter Reynolds, Inc.*, No. 91-F-591 (D.Col. June 15, 1992);

    *Pacific Mutual Life Ins. Co. v. First Republicbank Corp.*, No. 3:91-CV-0441-H (N.D.Tex. July 13, 1992);

congressional enactment in controversy, designed to affect pending litigation and to overrule Supreme Court decisions, to be unconstitutional. I am persuaded that Congress infringed upon judicial authority by setting out specific rules of decision in pending cases, such as the instant case, as proscribed in *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871).

I would affirm the decision of the district court, and accordingly I respectfully dissent.

*Dulude v. Cigna Sec., Inc.,* No. 90–CV–72191–DT (E.D.Mich. May 14, 1992).