**COOPERATIVA DE AHORRO Y CREDITO AGUADA, Plaintiff, Appellant,**

v.

**KIDDER, PEABODY & CO., et al., Defendants, Appellees.**

No. 92–2148.

United States Court of Appeals, First Circuit.

Heard Feb. 4, 1993.

Decided May 19, 1993.

Rehearing and Rehearing En Banc Denied June 23, 1993.

Enrique Peral, with whom Edgardo L. Rivera, Roberto Boneta, and Munoz Boneta Gonzalez Arbona Benitez & Peral, were on brief, for plaintiff, appellant.

Nestor M. Mendez–Gomez, with whom Patricia Rivera–MacMurray and Pietrantoni Mendez & Alvarez, were on brief, for defendant, appellee Kidder, Peabody & Co.

Gladys Isabel Flores, for defendant, appellee Ramon Almonte.

Guillermo J. Bobonia and Carlos A. Bobonis on brief, for defendant, appellee Paine Webber Inc.

Before SELYA, CYR, and STAHL, Circuit Judges.

STAHL, Circuit Judge.

In this appeal, we must decide whether the district court properly applied Fed.R.Civ.P. 12(b) in dismissing plaintiff's complaint as time barred. Because the district court improperly relied on materials not within the pleadings in reaching its decision, we reverse the dismissal.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

For purposes of this appeal, we provide only a summary of the procedural history of this case.[1] Plaintiff-appellant Cooperativa de Ahorro y Credito Aguada ("the Coop") is a single-branch savings and loan cooperative located in Aguada, Puerto Rico. On December 28, 1989, more than three years after purchasing shares in Drexel Burnham Lambert Unit Trust Bond Funds (hereinafter "Unit Trusts"), the Coop brought Section 10(b)[2] and Rule 10b–5[3] claims against its

---

**1.** For more detailed accounts of the case, *see Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 758 F.Supp. 64 (D.P.R.1991) (hereinafter *"Cooperativa I"*); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 777 F.Supp. 153 (D.P.R.1991) (hereinafter *"Cooperativa II"*); *Cooperativa de Ahorro y Credito*

*Aguada v. Kidder, Peabody & Co.*, 799 F.Supp. 261 (D.P.R.1992) (hereinafter *"Cooperativa III"*).

**2.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), states in relevant part:

financial services brokers, defendants-appellees Kidder, Peabody & Co. ("Kidder") and Ramon Almonte.[4] The complaint alleged that Almonte, while employed at Kidder, had fraudulently induced the Coop to purchase shares in the Unit Trusts by misrepresenting to the Coop the nature and risk of these investments. As to timeliness, the complaint alleged that, because Almonte had continued to misrepresent the nature and value of the Unit Trusts from the date of purchase through July of 1989, the applicable Puerto Rico two-year statute of limitations had tolled.[5]

While the Coop's claims were pending before the district court, the United States Supreme Court announced a uniform federal statute of limitations for all Section 10(b) and Rule 10b–5 claims in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). *Lampf* held that such claims must be brought within one year of discovery of the facts which give rise to the violation, and no more than three years after the violation itself. *Id.* at —— - ——, 111 S.Ct. at 2781–82. The one-and-three year limitation announced in *Lampf* is not subject to tolling. *Id.* at ——, 111 S.Ct. at 2782. Because the Coop's claims had been filed more than three years after the purchase of the Unit Trusts, the district court, relying on *Lampf,* dismissed the claims (hereinafter "the first dismissal"). *Cooperativa II,* 777 F.Supp. at 155–56.

Less than two months after the first dismissal, the Coop's claims were reinstated by Section 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2236, 2387 (codified as § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1) (hereinafter "Section 27A").[6] Section 27A reinstates

---

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. Rule 10b–5, 17 C.F.R. § 240.10b–5 states:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
  (a) To employ any device, scheme, or artifice to defraud,
  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or
  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.

4. The complaint also named Almonte's subsequent employer, Paine Webber, Inc., ("Paine Webber"), as a defendant, and alleged other securities, RICO, and mail fraud claims against Almonte, Kidder and Paine Webber. These additional federal claims were dismissed by the district court and are not before us on this appeal.

*See Cooperativa I,* 758 F.Supp. at 64; *Cooperativa II,* 777 F.Supp. at 157–61.

In addition, the complaint included state law fraud claims against all three defendants. These claims were dismissed for want of pendent jurisdiction coincident with the dismissal of the federal securities claims. *See Cooperativa II,* 777 F.Supp. at 161. While our decision in the instant appeal will result in the reinstatement of those claims as well, we reinstate them without prejudice to the district court's further consideration of whether or not it should hear and determine them under pendent and/or supplemental jurisdiction.

5. The parties do not dispute that at the time the Coop filed suit, the applicable statute of limitations was the two-year provision "borrowed" from the Puerto Rico Securities Act, 10 L.P.R.A. § 890(e). This two-year limitation was subject to equitable tolling under the doctrine of fraudulent concealment, which provides that "the statute of limitations applicable to claims under Section 10(b) and Rule 10b–5 begins to run when an investor, in the exercise of reasonable diligence, discovered or should have discovered the alleged fraud." *General Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 11 (1st Cir.1986).

6. Section 27A provides:
  **(a) Effect on pending causes of action**
    The limitation period for any private civil action implied under [section 10(b)] that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

claims which, like the Coop's, were (1) pending at the time *Lampf* was decided, and (2) dismissed as time barred under *Lampf.* Pursuant to Section 27A, the Coop filed a timely motion for reinstatement.

With the Coop's claims before it a second time, the district court set out to apply the pre-*Lampf* statute of limitations, which, as noted above, was subject to tolling. Having no discovery before it on the issues of timeliness and tolling, the district court applied Fed.R.Civ.P. 12(b) [7] to the Coop's motion for reinstatement.

The district court began its application of Rule 12(b) with a brief analysis of the junk bond market. Relying extensively on articles in the national press, submitted by neither party, the district court found that "it was public common knowledge within institutional investment circles that ... the high yield bonds sold by Drexel were accompanied by an equally high risk," *Cooperativa III,* 799 F.Supp. at 264, and that "any reasonabl[y] sophisticated institutional investor should have recognized that it was investing in junk bonds." [8] *Id.* at 266. The district court concluded that the Coop "was under an obligation to conduct a reasonably diligent inquiry from the date of purchase of [the Unit Trusts] and so the statute of limitations began to run on that date." *Id.*

As an alternative date for commencing the running of the statute of limitations, the district court found that the stock market crash of October 19, 1987, was sufficient to put the Coop on notice of its possible securities claims against defendants. *Id.* at 265–66. Again, the court relied on national press reports submitted by neither party to support its view that such notice was within the realm of common knowledge. [9]

Applying either date, the district court found that the Coop's December 28, 1989, complaint failed to state a timely claim under Puerto Rico's two-year statute of limitations. Accordingly, it dismissed the Coop's claims a second time (hereinafter "the second dismissal"). *Id.*

The Coop now appeals the second dismissal, arguing that the district court's reliance on materials outside of the pleadings was improper and thus not a valid basis for dismissing its claim. For the reasons that follow, we agree.

## II.

### DISCUSSION

■ Under Rule 12(b), "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under [Fed.R.Civ.P.] 56." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). *See also* Fed.R.Civ.P. 12(b) (if "matters outside the pleading are presented to and not excluded

---

**(b) Effect on dismissed causes of action**
    Any private civil cause of action implied under [section 10(b)] that was commenced on or before June 19, 1991—
        (1) which was dismissed as time barred subsequent to June 19, 1991, and
        (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991, shall be reinstated on motion by the plaintiff not later than 60 days after Dec. 19, 1991.

**7.** Defendants argue that the district court applied Rule 60(b) to the motion for reinstatement. Though the district court did refer to the motion as a "Fed.R.Civ.P. 60(b) motion for reconsideration," *Cooperativa III,* 799 F.Supp. at 262, it went on to apply a Rule 12(b) standard, "[l]ooking at the facts in a light most favorable to [the Coop] and taking them as true, Fed.R.Civ.P. 12(b)(6)." *Id.* at 264.

Nothing in the language of Section 27A or in its legislative history suggests that district courts should apply Rule 60(b) to motions for reinstatement thereunder. Rather, Section 27A states that claims meeting its requirements *"shall be reinstated"* on motion by the plaintiff" (emphasis supplied). The district court properly chose to apply a Rule 12(b) standard to the Coop's motion for reinstatement, and we reject defendant's argument that the court applied or should have applied Rule 60(b).

**8.** The district court relied upon articles from, *inter alia, The Christian Science Monitor, Barrons, Forbes, Business Week, Fortune,* and *The Los Angeles Times. Cooperativa III,* 799 F.Supp. at 264 nn. 5, 6.

**9.** Here, the district court relied on articles from *The Financial Times, Reuters, The New York Times,* and *The Washington Post. Cooperativa III,* 799 F.Supp. at 265–66 nn. 10, 12.

by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). Moreover, upon conversion to summary judgment, "all parties shall be given a reasonable opportunity to present all material made pertinent" by the conversion. Fed.R.Civ.P. 12(b). *See also Whiting v. Maiolini,* 921 F.2d 5, 6 (1st Cir. 1990).

 Here, the district court relied extensively on materials outside the pleadings in reaching its conclusion as to when the statute of limitations began to run on the Coop's claims. In relying on these extraneous materials, the district court gave the parties neither notice nor opportunity to be heard, nor did it convert the proceeding to one for summary judgment. Such use of outside materials is beyond the scope of Rule 12(b).

Nor do we find that the district court's reliance on such material was within the scope of "judicial notice" under Fed. R.Evid. 201(b).[10] Ordinarily, when a district court takes judicial notice of a fact other than at the request of a party, it should notify the parties that it is doing so and afford them an opportunity to be heard. *United States v. Garcia,* 672 F.2d 1349, 1356 n. 9 (11th Cir. 1982). *See also Barr Rubber Prods. Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1125–26 (2d Cir.) (stating that failure to notify parties "exceeded the bounds of judicial notice, and thereby denied [party] an effective opportunity to object [to], examine and rebut the matters noticed") (footnote omitted), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); 21 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5107 (1977) ("[T]he judge must notify the parties that [s/]he is taking judicial notice of an adjudicative fact.") (footnote omitted). As noted above, the district court gave the parties no such opportunity to be heard. Accordingly, we find that the district court's use of scattered press reports to take judicial notice of an adjudicative fact was beyond the proper scope of judicial notice.

Finally, defendants offer an alternative ground for affirming the district court's dismissal of the Coop's claims, claiming that Section 27A is constitutionally infirm. For the reasons persuasively stated in *Anixter v. Home–Stake Prod. Co.,* 977 F.2d 1533, 1543–47 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1842, 123 L.Ed.2d 467 (1993), we reject defendants' constitutional challenges to Section 27A.[11] *See also Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567, 1571–75 (11th Cir.1992); *Berning v. United States,* 990 F.2d 272, 277–79 (7th Cir.1993).

### III.

### CONCLUSION

For the foregoing reasons, the order of the district court denying the Coop's motion for reinstatement under Section 27A is reversed.

*Reversed and remanded.*

---

10. Fed.R.Evid. 201(b) provides:
   A judicially noted fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

11. "Given the existence of a cogent, well-reasoned, eminently correct opinion closely on point, we embrace it." *United States v. 29 Cartons,* 987 F.2d 33, 37 (1st Cir.1993). Beyond *Anixter,* we add only the following comment in order to address defendants' argument that Section 27A unconstitutionally deprived them of a vested property right. It is well established that a party's property right in a cause of action does not vest "until a final, unreviewable judgment has been obtained." *Hammond v. United States,* 786 F.2d 8, 12 (1st Cir.1986). *See also Hoffman v. City of Warwick,* 909 F.2d 608, 621 (1st Cir. 1990). At the time that Section 27A was signed into law, no final judgment had been entered in the instant case. Accordingly, defendants' argument that Section 27A deprived them of a vested property right is without merit.