Adrian FREEMAN, et al., Plaintiffs–Appellants, Cross–Appellees,

v.

LAVENTHOL & HORWATH, et al., Defendants–Appellees,

Bank of the South, N.A., et al., Defendants–Appellees, Cross–Appellants.

Nos. 92–6123, 92–6191.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 20, 1993.

Decided July 21, 1994.

Rehearing Denied Sept. 2, 1994.

---

Ronald Parry, Arnzen, Parry & Wentz, Covington, KY, J. Michael Rediker, David J. Guin, David R. Donaldson, Ritchie & Rediker, Birmingham, AL, Richard H. Adams, Jr. (briefed), Richard D. Connor, Jr. (argued and briefed), Christopher T. Vernon, Pleus, Adams & Spears, Orlando, FL, for Adrian Freeman, Frederick Shear, Betty Powell, Harold Kabus, Kenneth Eyl.

Scott R. McIntosh (argued and briefed) U.S. Dept. of Justice, Appellate Div., Washington, DC, Barbara C. Biddle, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, for the U.S.

Thomas H. Christopher, Stephen E. Hudson (briefed), Jerre B. Swane, Kilpatrick & Cody, Atlanta, GA, Kurt Phillips, Deters, Benzinger & Lavelle, Covington, KY, for Bank of the South, N.A.

Paul J. Vesper, Covington, KY, for North River Retirement Center, Inc.

Arnold Taylor, Michael J. O'Hara, O'Hara, Ruberg & Taylor, Covington, KY, for Gary Schearer, William Limerick, Lucille Buechel, John Caldwell, Charles Wolfson, Albert Vesper, Carroll M. Ewing.

Michael E. Maundrell, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, for Estate of E.W. Richmond, D. Scott Richmond.

Thomas S. Shore, Jr., Michael E. Maundrell, Robert F. Brown, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, for Connor, Neal & Richmond.

William R. Hardy, Paul A. Komarek, Cincinnati, OH, for J. Milton Newton, Inc.

William R. Hardy, J. Jeffrey Landen, Cincinnati, OH, for Hurt, Richardson, Garner, Todd & Cadenhead, W. Thomas King.

Edward H. Stopher, Philip J. Edwards, Boehl, Stopher & Graves, Louisville, KY, for Rubin & Hayes, Joseph Rubin.

Herbert P. Schlanger, Atlanta, GA, for A.O. Jones & Co., Allen O. Jones.

John T. Marshall, William G. Leonard (argued and briefed), Powell, Goldstein, Frazer & Murphy, Atlanta, GA, Rodney S. Bryson, Ware, Bryson, West & Bartlett, Edgewood, KY, for Arnall, Golden & Gregory, James Dorsey.

Sait R. Tarhan, Newport, KY, for Assistance in Living Services Corp., Janene F. McLane–McDonald.

Charles N. Braun, II, Indianapolis, IN, for McCarson Roberts, Phillip E. Roberts, McCarson Roberts, Inc.

Robert E. Dever, Bannon, Howland & Dever, Portsmouth, OH, for National Health & Retirement Corp.

A. Roger Meece, Lexington, KY, for A. Roger Meece.

David S. Cupps, Vorys, Sater, Seymour & Pease, Cleveland, OH, for Laventhol and Horwath and Aaron Rose.

Before: MILBURN and NELSON, Circuit Judges; and GILMORE, Senior District Judge.*

GILMORE, Senior District Judge, delivered the opinion of the court in which MILBURN, Circuit Judge, joined. NELSON, Circuit Judge (pp. 344–45), delivered a separate opinion concurring in part and dissenting in part.

GILMORE, Senior District Judge.

The plaintiffs, Adrian Freeman, et al., appeal from an order of the United States District Court for the Eastern District of Kentucky granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for defendants on the ground that plaintiffs' federal securities claims brought pursuant to § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 were time-barred. Defendants, Bank of the South, et al., cross-appeal the district court's order denying

---

* The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

their earlier motion for summary judgment based on a statute of limitations defense.

On appeal, the principal issues before this Court include: (1) whether the district court erred in applying the statute of limitations embodied in Kentucky's blue sky law, thereby refusing to apply Kentucky's borrowing statute, and (2) whether the district court erred in ruling that § 27A of the Securities Exchange Act of 1934 is unconstitutional. For the reasons set out below, we reverse in part and remand this case for further proceedings.

## I.

A careful review of the record demonstrates the following facts. In 1983, the City of Florence, Kentucky issued tax-exempt municipal bonds (the "Bonds") to finance the cost of acquiring and constructing the North River Retirement Center, Inc. ("North River"), a residential facility for the elderly. The Bonds were issued and sold pursuant to an Official Statement dated June 30, 1983.

North River was intended to be a three story facility, consisting of 175 separate residential units. The construction of the North River project was substantially finished, but the project was not successful. In July of 1985, the indenture trustee, Bank South, N.A., declared the project to be in default as not enough units had been sold to service the debt. As a result, the December 1, 1985 first scheduled interest payment to bondholders was not made. Thereafter, on December 31, 1986, North River filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*

Plaintiffs commenced this federal securities action on December 30, 1987, on behalf of the holders of the $18,230,000.00 of Bonds, alleging a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. 240. Defendants comprise the participants in the bond issue, including the directors, feasibility consultants, project manager, project coordinator, marketing agent, and indenture trustee of North River, as well as various underwriters, broker-dealers, accountants and attorneys. Although the five named plaintiffs brought this action as a class action, the district court never certified a class.

On October 3, 1988, defendants moved to dismiss the complaint, or for summary judgment, on the ground that plaintiffs' § 10(b) claims were time-barred. Defendants argued that the appropriate statute of limitations for § 10(b) claims was the "one year/three-year" statute of limitations found in the 1934 Act for express causes of action created by the Act—one year after plaintiffs discovered the facts constituting the violation, but in any event not more than three years after the violation. Defendants urged the district court to follow the Third Circuit's decision which had already determined that this was the correct rule.[1]

Alternatively, defendants argued that if the district court felt constrained to follow the then-existing precedent of "borrowing" state law to supply the statute of limitations for § 10(b) claims, then the district court was obliged to apply Kentucky's "borrowing statute," Ky.Rev.Stat. Ann. § 413.320, as an integral part of Kentucky limitations law.

The district court denied defendants' motion in an order and opinion dated April 13, 1989. The district court stated that it was obliged by the then-existing precedent to apply "the three year Kentucky blue sky law statute of limitations contained in [Ky.Rev. Stat. Ann.] § 292.480(3)," and that "under Federal law, [the] statute of limitations begins to run when 'the fraud is or should have been discovered.'" The district court then determined that a reasonable investor should have been on notice of the potential problems on December 1, 1985 (when North River failed to make the first scheduled interest payment to bondholders), and thus plaintiffs' complaint filed on December 30, 1987 was not untimely under Kentucky's three year limitations period.

In a separate opinion entered the same day, the district court denied defendants' motion to dismiss, or for summary judgment, on plaintiffs' "fraud on the market" claims. The

---

**1.** *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.) (en banc), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

district court certified both its statute of limitations and its fraud rulings for interlocutory appeal. This Court granted defendants permission to appeal only the fraud on the market issue. The interlocutory appeal of the fraud on the market issue resulted in the reversal of the district court. This Court ruled that defendants were entitled to judgment as a matter of law on plaintiffs' fraud on the market claims, and the case was remanded for further proceedings. *See Freeman v. Laventhol & Horwath,* 915 F.2d 193 (6th Cir.1990).

On June 20, 1991, the United States Supreme Court decided *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In *Lampf,* the Court adopted the "one-year/three-year" limitations period in § 9(e) of the Securities Exchange Act of 1934 as a uniform statute of limitations in § 10(b) actions. Therefore, after *Lampf,* the limitations period for § 10(b) claims is one year from discovery of the fraud, but in any event not more than three years from the acts giving rise to the claim. Because the plaintiffs in *Lampf* had filed their complaints more than three years after the defendant's alleged misrepresentations, the Court dismissed their claims as untimely.

On the same day, the Supreme Court ruled in *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), that a newly announced rule of law that was applied to the litigants before the court must be retroactively applied by the courts to all cases not barred by res judicata or procedural requirements. Because the Supreme Court applied the new limitation period to the litigants in *Lampf,* *Beam* required the retroactive application of *Lampf*'s one-year/three-year limitations period to all pending § 10(b) cases, including the instant case. *See, e.g., Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991).

Thereafter, on July 9, 1991, defendants filed a joint motion for judgment on the pleadings, arguing that the instant action was not timely under *Lampf.*

2. In jurisdictions which had already adopted a uniform federal limitations period before *Lampf,* but had declined to apply that period retroactive-

Following the Supreme Court's decisions in *Lampf* and *Beam,* on December 19, 1991 President Bush signed into law the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–402, 105 Stat. 2236, which included as § 476 what is now codified as § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1 ("§ 27A"). The legislative history of the Act reflects an intention by its proponents "to overturn[ ] the most egregious part of the [*Lampf*] decision" by directing courts, in the § 10(b) cases that were pending on June 19, 1991, to disregard the Supreme Court's holdings in *Lampf* and *Beam* in determining the appropriate statute of limitations. 137 Cong. Rec. S18,-623 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan). In jurisdictions that had borrowed state limitations periods prior to *Lampf,* like this circuit, "the [state] borrowing approach would continue to apply" to pre-*Lampf* suits by virtue of § 27A. *Id.* at S18,624 (daily ed. Nov. 27, 1991) (Sen. Bryan).[2] Section 27A provides that:

(a) Effect on pending causes of action.— The limitation period for any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) Effect on dismissed causes of action.— Any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after December 19, 1991.

ly to pending cases, "the courts would continue to be obliged to decline to apply the new rule." *Id.*

15 U.S.C. § 78aa–1. Only subsection (a) is reviewed on this appeal because plaintiffs' federal securities claims were not dismissed before § 27A was enacted and, therefore, subsection (b) is inapplicable.

On the basis of § 27A, the parties filed supplemental briefs in the district court regarding the statute of limitations issue. On August 13, 1992, the district court held a hearing on defendants' joint motion for judgment on the pleadings on the basis of *Lampf* and *Beam.* Plaintiffs argued that defendants' motion should be denied as moot in light of § 27A. The district court, however, found that § 27A was unconstitutional and applied the *Lampf* limitation period to this case even though the case was filed before the decision in *Lampf.* Because the facts upon which plaintiffs' § 10(b) and Rule 10b–5 claims were based occurred more than three years before the plaintiffs filed their claim, the district court dismissed plaintiffs' case as time-barred under the one-year/three-year limitations period found in § 9(e) of the 1934 Act.

On August 14, 1992, the district court entered judgment in favor of defendants. Plaintiffs' timely appeal followed. Defendants filed a timely cross-appeal from the district court's order dated April 13, 1989, which had denied their earlier motion to dismiss plaintiffs' § 10(b) claims as time-barred under the relevant state limitations periods.

## II.

Because this Court's determination of defendants' cross-appeal could possibly dispose of the constitutional issue, the merits of the cross-appeal are discussed first. Accordingly, we will assume the constitutionality of subsection (a) for the purposes of this analysis, and then look to state law, as directed by statute. On cross-appeal, defendants argue that the district court erred in applying the statute of limitations found in Kentucky's blue sky law to plaintiffs' § 10(b) claims. Instead, defendants contend that the district court should have used Kentucky's borrowing statute in determining the appropriate limitations period applicable before *Lampf.*

■ The district court's determination that Kentucky's blue sky law provided the appropriate limitations period for plaintiffs' § 10(b) claims is a conclusion of law and, therefore, is subject to a *de novo* review by this Court. *See Holmes v. Donovan,* 984 F.2d 732, 735 (6th Cir.1993). Notwithstanding, the district court's conclusion about when the limitations period began to run is a finding of fact which may be reversed only if it was clearly erroneous. *See Brock v. TIC Int'l Corp.,* 785 F.2d 168 (7th Cir.1986).

■ Under § 27A, the limitations period for § 10(b) claims is to be determined by the "limitation period provided by the laws applicable in the jurisdiction" prior to the Supreme Court's decision in *Lampf.* As of June 19, 1991, no express federal statute of limitations existed for § 10(b) and Rule 10b–5 actions. Section 10(b) of the Securities Exchange Act of 1934 does not create a private right of action against those who violate its terms. *Carothers v. Rice,* 633 F.2d 7 (6th Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1702, 68 L.Ed.2d 199 (1981).

■ Because private rights of action under § 10(b) are judicially created, there is no federal statute of limitations for such claims. *Id.* at 8. In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court stated, "Since no statute of limitations is provided for civil actions under § 10(b), the law of limitations of the forum state is followed as in other cases of judicially implied remedies." Thus, to determine the correct statute of limitations, this Court must "look to the statutes of the forum state ... and apply that which best effectuates the purposes of the federal securities law." *Carothers,* 633 F.2d at 8–9. *See also Nickels v. Koehler Management Corp.,* 541 F.2d 611, 613 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977); *IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 342 (6th Cir.1976).

In deciding defendants' motion to dismiss or for summary judgment on a statute of limitations defense, the district court was faced with the responsibility of choosing the appropriate statute of limitations for plain-

tiffs' § 10(b) claims from two different Kentucky statutes. The first of these is the three year statute of limitations contained in Kentucky's blue sky law, Ky.Rev.Stat. Ann. § 292.480(3). The second is the limitations period provided by Kentucky's borrowing statute, Ky.Rev.Stat. Ann. § 413.320.

In *Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981), the Sixth Circuit held that the three year statute of limitations contained in Kentucky's blue sky law is the statute of limitations that best effectuates the purposes of the federal securities laws. Accordingly, the *Herm* court held that "the Kentucky Blue Sky statute of limitations will be applied to actions brought under Section 10(b) of the [Securities Exchange Act of 1934]." *Id.* at 678. *See also Carothers v. Rice, supra.*

Defendants argue that Kentucky's borrowing statute must be considered when selecting a limitations period for plaintiffs' federal securities claims. The Kentucky borrowing statute provides as follows:

When a cause of action has arisen in another state or country, and by the laws of this state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period.

Ky. Rev. Stat. Ann. § 413.320. Thus, there are two requirements for applications of the Kentucky borrowing statute: (1) the cause of action must have arisen outside of Kentucky; and (2) the applicable limitations period in the state where the claim arose must be shorter than Kentucky's limitation period.

Defendants urge this Court to apply Kentucky's borrowing statute to plaintiffs' § 10(b) claims and borrow the appropriate statutes of limitations from North Carolina and Florida. Defendants contend that this Court should follow persuasive authority from the Second Circuit which holds that a cause of action for securities fraud accrues "where [the fraud's] economic impact is felt, normally the plaintiff's residence." *See Ceres Partners v. GEL Assoc.,* 918 F.2d 349, 353 (2d Cir.1990). Defendants request that

the Court look to North Carolina and Florida because that is where four of the five named plaintiffs reside, i.e., plaintiff Freeman resides in North Carolina, and plaintiffs Kabus, Powell, and Shear reside in Florida. Defendants submit that both North Carolina and Florida provide a two year statute of limitations for § 10(b) claims. According to defendants, these four named plaintiffs bought the Bonds in their respective states, and felt the economic impact of the bond default in their respective states. Because the limitations period for § 10(b) claims in both Florida and North Carolina is two years, one year shorter than Kentucky's three year limitations period for § 10(b) claims, defendants maintain that the § 10(b) claims asserted by plaintiffs Freeman, Kabus, Powell and Shear must be dismissed as time-barred.

Additionally, defendants contend that plaintiff Eyl's federal securities claim is time-barred even if Kentucky's three year limitations period is applied. Defendants submit that Eyl, a Kentucky resident, was placed on inquiry notice by a letter he received from his broker in November 1984, more than three years before his lawsuit began. According to defendants, the letter stated that as of July 1984, only 29 units at North River had been sold, instead of the 76 units that the marketing plan required. Defendants maintain that the letter provided Eyl with sufficient facts to put him on inquiry notice, but Eyl sat on his rights for over three years. Therefore, defendants argue that plaintiff Eyl's § 10(b) claim is time-barred under the statute of limitations set forth in Kentucky's blue sky law.

Plaintiffs respond by arguing that their § 10(b) claims were timely filed under the three year statute of limitations contained in Kentucky's blue sky law. Relying on this Court's decision in *Champion Int'l Corp. v. United Paperworkers Int'l Union,* 779 F.2d 328 (6th Cir.1985), plaintiffs contend that this Court should adopt the limitations period from the forum state's most analogous statute, i.e., Kentucky's blue sky law, as the Court has consistently done over the years. Moreover, plaintiffs maintain that Kentucky's borrowing statute was not designed to apply to a federal statute, and does nothing to

further the remedial policies behind § 10(b). Finally, plaintiffs argue that under Kentucky's borrowing statute, the Court must apply the limitations period of the state with the most significant relationships to the cause of action, rather than the several states where each plaintiff resides. Plaintiffs assert that other than the residence of the named plaintiffs, every other factor in this case arises in Kentucky.

Until recently, the Sixth Circuit had not ruled on whether, in a securities fraud action, a federal court should apply the forum state's borrowing statute in determining the length of the limitations period. In *Caproni v. Prudential Sec., Inc.,* 15 F.3d 614 (6th Cir.1994), this circuit held that federal courts must apply the forum state's borrowing statute in private actions for securities fraud where the cause of action accrued outside of the forum state. Plaintiff Caproni, a Kentucky resident, filed an action in the Eastern District of Michigan alleging, *inter alia,* violations of §§ 10(b) and 15 of the Securities Exchange Act of 1934. The district court declined to apply the six year statute of limitations for fraud actions of the forum state of Michigan upon its finding that the cause of action accrued in Kentucky and, therefore, the Michigan borrowing statute was applicable. *Id.* at 617. Because the district court concluded that plaintiff's securities claims had accrued more than three years before her complaint was filed, the court dismissed her securities claims as untimely filed. *Id.*

On appeal, the judgment of the district court was affirmed as to plaintiff's securities claims. First, the *Caproni* court rejected plaintiff's argument that this circuit's decision in *Champion Int'l Corp. v. United Paperworkers Int'l,* 779 F.2d 328 (6th Cir.1985), stands for the proposition that adoption of the forum state's borrowing statute is prohibited in a securities fraud action. The *Caproni* court reasoned that the forum state's borrowing statute should be applied in the action at bar because the resulting shorter limitation period would not be inconsistent with federal policy which favors shorter limitation periods in securities fraud actions, as evidenced by the Supreme Court's enactment of the one-year/three-year limitation period in

*Lampf.* Thus, the court held that the district court did not err in determining that the Michigan borrowing statute was applicable to plaintiff's securities claims and, therefore, her claims were properly analyzed under Kentucky's three year statute of limitations for securities fraud actions. *Caproni,* 15 F.3d at 618.

Second, the *Caproni* court adopted the Second Circuit's "sensible rule" that the place where the economic impact is felt, normally the plaintiff's residence, is the place of accrual for a securities fraud action. *Id.* at 619 (*quoting Ceres Partners, supra*). Applying this rule, the *Caproni* court concluded as follows:

> We hold that the district court did not err in determining that the plaintiff's claim accrued in Kentucky. Like the plaintiffs in *Arneil v. Ramsey,* 550 F.2d 774 (2d Cir.1977) (holding that the place where the economic injury was suffered, Washington, is the place of accrual of a federal securities fraud action), of whom the court said, "to the extent they suffered a financial loss from their transaction with Blair, they suffered it in Washington[,] [t]o the extent they became poorer men, they became poorer Washingtonians," to the extent that Caproni became a poorer woman because of her transactions with Sullivan, she became a poorer Kentuckian.

*Caproni,* 15 F.3d at 619. Accordingly, the *Caproni* court concluded that the district court did not err in employing the Michigan borrowing statute to apply the Kentucky statute of limitations to plaintiff's federal securities fraud claim. *Id.*

In the instant case, the district court declined to apply Kentucky's borrowing statute. The district court determined that the borrowing statute was not applicable to this cause because plaintiffs' § 10(b) claims arose in Kentucky rather than the states of residence of the various plaintiffs. The district court stated:

> Most of the facts in this case indicate that the cause of action arose in Kentucky. The North River project was located in Kentucky and operated by a Kentucky Corporation, with a board of directors who were predominantly Kentucky residents.

The bonds were issued in the name of the City of Florence, Kentucky, and the interest on the bonds was paid from Kentucky. The bankruptcy proceeding of the project is in the bankruptcy court in Kentucky. Finally, the act of default occurred in Kentucky when the North River Corporation failed to remit a payment to the bondholders' trustee.

J.A. at 587. Based on these findings, the district court determined that plaintiffs' claims accrued in Kentucky and, therefore, declined to apply the borrowing statute. Instead, the district court applied the three year limitations period in Kentucky's blue sky law and found that plaintiffs' § 10(b) claims were not time-barred.

■ Following this Court's reasoning in *Caproni*, we must hold that the district court erred in determining that the § 10(b) claims asserted by plaintiffs Freeman, Kabus, Powell, and Shear accrued in Kentucky. We find that to the extent these four plaintiffs resided in states other than Kentucky and felt the economic impact of the bond default in their respective states of residence, those states represent the place where the economic injury was suffered. In their brief to this Court, defendants argued, and plaintiffs have not refuted, that plaintiff Freeman resides in North Carolina and plaintiffs Kabus, Powell, and Shear reside in Florida. On this record, we must conclude that the federal securities claim of plaintiff Freeman accrued in North Carolina, and the federal securities claims of plaintiffs Kabus, Powell, and Shear accrued in Florida. Therefore, we reverse the district court's finding that these four plaintiffs' claims accrued in Kentucky.

■ Although a federal court looks to state law to determine the length of the statute of limitations, it must apply federal law to determine the date on which a statute of limitations in a federal securities case began to run. *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Herm v. Stafford*, 663 F.2d 669, 682 (6th Cir.1981). Under federal law, a statute of limitations begins to run when "the fraud is or should have been discovered." *Herm*, 663 F.2d at 682.

■ In this case, the lower court held that plaintiffs' complaint, filed on December 30, 1987, was timely filed within the three year statute of limitations mandated by Kentucky's blue sky law. The district court concluded that:

... a reasonably diligent person should have discovered the participation of the particular defendants in the alleged fraud on or around December 1, 1985. Thus, the statute of limitations did not begin to run until the first interest payment was not paid, which was approximately December 1, 1985.

J.A. at 589. We find that the district court did not err in finding that plaintiffs' § 10(b) claims accrued on December 1, 1985.

We cannot, however, agree with the district court's determination that plaintiffs' complaint, filed on December 30, 1987, was timely filed as to plaintiffs Freeman, Kabus, Powell, and Shear. We earlier concluded that the federal securities claims of these plaintiffs accrued in their respective states of residence, i.e., North Carolina and Florida. Both North Carolina and Florida have a two year statute of limitations for § 10(b) claims, one year shorter than Kentucky's three year limitations period for such claims. Because the cause of action for these named plaintiffs arose in North Carolina and Florida, and because the applicable limitations period in both North Carolina and Florida is two years, one year shorter than Kentucky's three year limitations period, the Kentucky borrowing statute must be applied as to these plaintiffs. Pursuant to that statute, the two year limitations period for North Carolina and Florida governs. Accepting the district court's determination that plaintiffs' federal securities claims accrued on December 1, 1985, plaintiffs' complaint, filed on December 30, 1987, was untimely filed as to plaintiffs Freeman, Kabus, Powell, and Shear and their claims must be dismissed.

■ The fifth plaintiff in this action is plaintiff Eyl, a resident of Kentucky. We are not persuaded by defendants' argument that plaintiff Eyl's § 10(b) claim is time-barred even under the three year limitations period mandated by Kentucky's blue sky law. Defendants contend that plaintiff Eyl was

put on inquiry notice more than three years before this action was commenced because he received a letter from his brokerage house in November of 1984 that described some of the problems of the project. As noted earlier in this opinion, the district court found that the statute of limitations did not begin to run until December 1, 1985. Because we conclude that the district court's finding was not clearly erroneous, we find that plaintiff Eyl's claim is not time-barred as it also accrued on December 1, 1985. Applying Kentucky's three-year limitations period to plaintiff Eyl's claim, we hold that his complaint was timely filed on December 30, 1987.

### III.

█ Because plaintiff Eyl's action is not time-barred under § 27A(a), we must address the constitutionality of subsection (a). The district court found that § 27A was unconstitutional on two grounds. First, the enactment of § 27A directed a certain result without changing the underlying law, thereby violating the rule of *United States v. Klein,* 80 U.S. (13 Wall) 128, 20 L.Ed. 519 (1871). Second, the enactment of § 27A essentially violated the rule of *Beam* which established a constitutionally-based principle of retroactivity. The constitutionality of a statute is a question of law and, therefore, subject to *de novo* review by this Court. *See United States v. Knipp,* 963 F.2d 839, 843 (6th Cir. 1992); *Gray v. First Winthrop Corp.,* 989 F.2d 1564, 1567 (9th Cir.1993).

On appeal, defendants contend that the district court properly found § 27A unconstitutional and, therefore, under the one-year/three-year limitations period announced in *Lampf,* plaintiffs' § 10(b) claims are time-barred as a matter of law. Defendants raise two constitutional objections to § 27A: (1) § 27A is unconstitutional under *Klein,* because it tells courts how to decide pending cases without changing the underlying rules governing the cases; and (2) § 27A effectively violates the constitutionally-based principle against selective prospectivity as set forth in *Beam.*

Several circuits have addressed the constitutionality of § 27A and have held it constitu-

tional. *See, e.g., Axel Johnson, Inc. v. Arthur Andersen & Co.,* 6 F.3d 78 (2d Cir.1993) (upholding the constitutionality of both subsections of § 27A as applied); *Cooke v. Manufactured Homes, Inc.,* 998 F.2d 1256 (4th Cir.1993) (holding that § 27A does not violate separation of powers doctrine); *Pacific Mut. Life Ins. Co. v. First RepublicBank Corp.,* 997 F.2d 39 (5th Cir.1993) (adopting reasoning of various circuits that § 27A is constitutionally firm), *cert. granted,* —— U.S. ——, 114 S.Ct. 680, 126 L.Ed.2d 648 (1994); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,* 993 F.2d 269 (1st Cir. 1993) (rejecting defendants' constitutional challenges to § 27A); *Berning v. A.G. Edwards & Sons, Inc.,* 990 F.2d 272, 277 (7th Cir.1993) (holding that § 27A does not violate: (1) separation of powers doctrine, (2) Supreme Court's holding in *Beam,* or (3) Supreme Court's holding in *Klein* ); *Gray v. First Winthrop Corp., Inc.,* 989 F.2d 1564 (9th Cir.1993) (holding that § 27A is constitutional); *Anixter v. Home–Stake Prod. Co.,* 977 F.2d 1533 (10th Cir.1992) (holding squarely that § 27A passes constitutional muster under *Klein* because it changes the law governing the limitations period for a class of pending private § 10(b) actions), *cert. denied,* —— U.S. ——, 113 S.Ct. 1841, 123 L.Ed.2d 467 (1993); *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567 (11th Cir.1992) (holding that § 27A does not violate the separation of powers doctrine), *cert. denied,* —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). *See also, Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc.,* 967 F.2d 742, 751 n. 6 (2d Cir.1992) (noting in dicta that it is "unimpressed by the cogency of [the] analysis" of those district courts that hold § 27A unconstitutional).

In each of those cases, the defendants argued that § 27A(a) was unconstitutional on primarily the same grounds as asserted by defendants in the instant case. Thus, all of defendants' arguments have already been squarely addressed and disposed of by several other courts of appeals. For the reasons persuasively stated in the aforementioned

cases, we join those circuits in holding that § 27A(a) is constitutional.[3]

■ In their constitutional challenge to § 27A(a), defendants rely primarily on *United States v. Klein, supra* to urge that § 27A violates the doctrine of separation of powers. Defendants contend that § 27A does not change existing law or create new law, but specifically commands the court to decide pending cases in a particular manner. Defendants maintain that enactment of § 27A did not change § 10(b) or § 9(e), but only directed courts to ignore § 9(e) for a designated class of cases. Hence, defendants argue that Congress overstepped its legislative function to mandate judicial decisions.

This was principally the same argument asserted by the defendants in *Anixter* and *Henderson*. The *Anixter* court squarely addressed the separation of powers argument and determined that the legislation at issue in *Klein* was different from § 27A. As the Tenth Circuit stated in *Anixter*:

> This case is not *Klein*. Section 27A does not direct courts to make specific factual findings or mandate a result in a particular case. It does not remove or alter the courts' constitutional adjudicatory function. Instead, in Section 27A, Congress prescribed a new statute of limitations for the judiciary to apply to all Section 10(b) litigation pending on June 19, 1991. Surely Congress has the power to change a rule of law and make that change applicable to pending cases.

*Anixter*, 977 F.2d at 1545 (cites omitted). We find that § 27A does not direct certain factual findings or impose a rule of decision for § 10(b) claims. Rather, § 27A changed the underlying substantive law for § 10(b) claims pending before *Lampf*. Accordingly, we adopt the Tenth Circuit's analysis of this

issue and hold that § 27A does not violate the separation of powers doctrine.

■ Defendants assert a second separation of powers challenge to § 27A, arguing that § 27A is unconstitutional because it violates the constitutionally-based principles of retroactivity announced in *Beam*. We reject this argument. In *Axel Johnson, supra*, the Second Circuit considered this argument and held that § 27A does not conflict with *Beam*. *Axel Johnson*, 6 F.3d at 82. The *Axel Johnson* court stated:

> This argument is grounded in the same flawed presupposition that underlies [plaintiff's] first argument: that § 27A entails legislative adjudication rather than a change in the statute of limitations law of § 10(b)/Rule 10b–5. Rather than directing courts not to give retroactive effect to the rule of *Lampf* in contravention of the rule of *Beam*, § 27A simply takes a limited class of cases outside of the reach of *Lampf*'s construction of § 10(b)/Rule 10b–5, directing application of a separate and distinct statute of limitations rule to those claims.

*Id.* at 82. The *Axel Johnson* court went on to say:

> Given our conclusion that § 27A does not involve an intrusion upon the retroactivity principle announced in *Beam*, we need not reach [plaintiff's] further contention that *Beam* was a constitutionally based decision, and thus was not open to congressional modification.

*Id.* We conclude that § 27A is not unconstitutional under *Beam*. Section 27A is a proper exercise of Congress' power to prescribe a new statute of limitations for a certain limited class of cases and, therefore, § 27A does

---

3. In *Plaut v. Spendthrift Farm, Inc.*, 1 F.3d 1487 (6th Cir.1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 2161, 128 L.Ed.2d 885 (1994), this circuit held that § 27A(b) was unconstitutional. The *Plaut* court expressly limited its holding to subsection (b) when it stated, "The parties do not dispute [subsection (a)]; we therefore do not address it." *Id.* at 1490 n. 5. The court went on to say, "Since § 27A(b) unambiguously requires courts to [vacate properly rendered judgments], we hold *that subsection* to be an unconstitutional usurpation of judiciary power." *Id.* at 1499 (emphasis added).

Certiorari has been granted on the question: "Whether Section 27A(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78aa–1, to the extent that it purports to require reinstatement of Section 10(b) actions dismissed with prejudice pursuant to judgments that became final prior to the enactment of Section 27A(b), contravenes the separation-of-powers doctrine or the Fifth Amendment Due Process Clause of the United States Constitution." —— U.S. ——, 114 S.Ct. 2161, 128 L.Ed.2d 885 (1994).

not violate the retroactivity principle announced in *Beam*. As such, we need not address defendants' assertion that *Beam* was a constitutionally based decision. *See generally Harper v. Virginia Dep't of Taxation*, —— U.S. ——, —— – ——, 113 S.Ct. 2510, 2517–18, 125 L.Ed.2d 74, 86 (1993) (court stated in dictum, "[o]ur approach to retroactivity heeds the admonition that '[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently.'" (*quoting American Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 214, 110 S.Ct. 2323, 2350, 110 L.Ed.2d 148 (1990) (Stevens, J., dissenting)). Based on the foregoing, we conclude that the district court erred in finding § 27A(a) unconstitutional.

It is undisputed that plaintiff Eyl's § 10(b) claim was pending before the district court when § 27A was enacted. As such, § 27A superseded the Supreme Court's decisions in *Lampf* and *Beam* as to his § 10(b) claims. Accordingly, we conclude that § 27A requires this Court to apply "the limitation period provided by the laws applicable in the jurisdiction, including principles of retro-activity, as such laws existed on June 19, 1991."

### IV.

Based on the foregoing, the district court's order denying defendants' motion for summary judgment based on the statute of limitations defense is REVERSED IN PART respecting the claims of plaintiffs Freeman, Kabus, Powell, and Shear and AFFIRMED IN PART respecting the claim of plaintiff Eyl. The district court's order dismissing plaintiff Eyl's § 10(b) claim as time-barred under *Lampf* is VACATED and REMANDED to the district court for further proceedings consistent with this opinion.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I agree that the claims of plaintiff Freeman, who lives in North Carolina, and plaintiffs Kabus, Powell, and Shear, who live in Florida, are time-barred whether or not § 27A(a) of the 1934 Act (15 U.S.C. § 78aa–1(a)) is constitutional. If § 27A(a) is constitutional, these claims are barred by the North Carolina and Florida statutes of limitation, as applied under Kentucky's borrowing statute. If § 27A(a) is unconstitutional, the claims are barred by the "one year/three year" limitations period of § 9(e) of the 1934 Act.

As far as the claim of plaintiff Eyl is concerned, it strikes me as a close question whether the limitations period began to run in November of 1984 or December of 1985. As of October 2, 1984, Mr. Eyl was told in November of that year, only "between 20 & 30" units at the retirement project had been sold, whereas the marketing schedule had called for the sale of 76 units by July 31, 1984. Mr. Eyl was further told that the marketing agent had been fired, that no replacement had been hired, that the sales staff consisted of only one salesperson and one director, and that the underwriter and the trustee had become very active in attempting to arrive at a solution with the project's board of directors. Mr. Eyl was reminded that interest and principal payments to the bondholders were to come mainly from occupancy fees, and he was told that the marketing efforts and results were "an area of concern for bondholders." The information received by Mr. Eyl in November of 1984 may well have constituted "storm warnings" sufficient to "alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction." See *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir.1988). If the warnings received by Mr. Eyl in November of 1984 were not sufficient to start the clock running, on the other hand, the clock clearly began to run no later than December of 1985, when the first interest payment was missed.

Under the rationale on which the district court ultimately entered judgment in favor of the defendants, it made no difference at all whether Mr. Eyl's cause of action accrued in 1984 or 1985; the claim was barred regardless, as long as § 27A(a) was deemed unconstitutional. Cases ought not to be decided on constitutional grounds where other grounds are available, however, and a non-constitutional ground may well be available here. I would therefore remand the case to the district court with instructions to reexamine the

question of when Mr. Eyl's claim accrued. If it should ultimately be determined that the claim accrued in 1984, there would be no need for us to pass judgment on the constitutionality of § 27A(a). I would prefer not to decide the constitutional issue unless it is clear that we have no alternative—and I am not yet persuaded that no alternative exists.