Nichols v. MPB Corp.                    CV-95-414-B    02/26/96
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW HAMPSHIRE


David Nichols

        v.                              Civil No. 95-414-B

MPB Corporation, d/b/a
Split Ball Bearing Division of MPB Corporation


                        **O R D E R**

        David Nichols brings an action against MPB Corporation,

d/b/a Split Ball Bearing Division of MPB Corporation ("MPB"), to

recover for injuries he received in an attack on him that

occurred at the Split Ball Bearing facility where he was working

as a custodian.  MPB moves to dismiss, or in the alternative for

summary judgment, on the grounds that it owed no duty to protect

Nichols from a criminal attack by an unidentified third party

and, further, that it's actions or omissions were not a proximate

cause of his injury.  For the following reasons, I deny MPB's

motion.


                **I.  BACKGROUND**

        As a preliminary matter, although MPB moved for summary

judgment in the alternative and included extra materials with the

motion, I treat it only as a motion to dismiss because neither

party complied with the Local Rule applicable to motions for summary judgment.  See LR 7.2(b).  Accordingly, I do not consider the facts presented in the additional materials attached to MPB's memorandum.  See Fed. R. Civ. P. 12(b)(6); Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody Co., 993 F.2d 269, 272-73 (1st Cir. 1993), cert. denied, 115 S.Ct. 1792 (1995).  Therefore, the facts are gleaned from the allegations in the complaint taken as true.  See, e.g. Acadia Motors, Inc. v. Ford Motor Co., 44 F.3d 1050, 1055 (1st Cir. 1995).

David Nichols and John Pederson were employees of Aslan Maintenance Company of Claremont, New Hampshire, that was hired by MPB to provide custodian services to its Split Ball Bearing Division in West Lebanon.  Nichols began as an Aslan employee beginning in June 1992 and initially his duties involved cleaning only the offices at Split Ball Bearing.  Within a few months, MPB hired Aslan to clean the shop area as well as the offices.  At about the time that Nichols began custodial work at Split Ball Bearing, some of the Split Ball Bearing employees were laid off and a series of incidents began in which Split Ball Bearing employees displayed hostility toward Aslan employees, Nichols and Pederson.

In June 1992, someone put sugar in Nichols's car gas tank while it was parked in the Split Ball Bearing parking lot. Management was notified of the incident. In February 1993, several days after more Split Ball Bearing employees were laid off including the janitorial staff, Nichols found a razor blade taped under a sink with the blade exposed. MPB then hired a security guard to protect Nichols and Pederson while they worked in the building, but discontinued the security measure after a week when no further incidents occurred.

MPB recalled many of its laid off employees at Split Ball Bearing in September 1994. The recalled employees were openly hostile toward Nichols and Pederson, making threats and derogatory remarks about them as they walked through the shop area of the building. The employees would also push equipment into their way. These incidents were reported to the Director of Human Resources at Split Ball Bearing, Todd Miller, who met with Nichols's and Pederson's supervisor at Aslan about the problem. Miller decided not to speak with his employees, however, because he was afraid of making the situation worse.

Early in the morning of November 22, 1994, while Nichols and Pederson were working at Split Ball Bearing, two employees told them to check their car in the parking lot. Nichols and Pederson

3

found that the Aslan van had been tipped over onto its side. Management was notified and the police were called. MPB thereupon hired a security company to patrol the outside of the building.

On December 2, 1994, Nichols and Pederson were working cleaning bathrooms, and Nichols took a load of several bags of trash to the trash compactor room which is located in another part of the shop area. After he entered the room, the lights went out, and he was attacked by two male assailants who choked him, punched him, wrenched his arm up behind his back, and then pushed him down. He heard one say to the other that they had to get back in. Nichols was knocked unconscious.

Pederson found him lying on the floor and summoned help. The police and an ambulance responded. Nichols was treated at the hospital for blunt neck trauma, chest bruises, and an injury to his right rotator cuff.

Nichols filed suit against MPB alleging that it was negligent in failing to provide adequate security, which lead to the attack and his injuries. I address MPB's motion to dismiss as follows.

4

## II. **STANDARD OF REVIEW**

When considering a motion to dismiss a complaint, I accept the well-pleaded factual allegations in the complaint as true and then determine whether the allegations are sufficient, under any theory, to state a claim for the relief sought. Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12 (1st Cir. 1994). Neither bald assertions nor legal conclusions enjoy the presumption of truth. United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). I will, however, draw all reasonable inferences in plaintiff's favor. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). I must not consider facts not alleged in the complaint unless I decide to treat the motion to dismiss as a motion for summary judgment, which I have already determined is inappropriate. Fed. R. Civ. P. 12(b)(6); Cooperativa de Ahorro Y Credito Aguada, 993 F.2d at 272-73.

## III. **DISCUSSION**

MPB argues that Nichols's allegations fail to state a claim as to two of the elements of a negligence cause of action, duty and causation. See Doucette v. Bristol, 138 N.H. 205, 210 (1993) ("the elements of negligence: a breach of the duty of care by the

defendant, which proximately causes the plaintiff's injury." (internal quotation omitted)). First, MPB contends that it owed no duty to protect Nichols from criminal assault. Second, even if a duty were owed, MPB avers, the assailants, rather than MPB, caused Nichols's injuries. Therefore, the motion raises a legal question as to whether MPB owed a duty to Nichols, under the particular circumstances presented here, to protect him from criminal attack, and also whether the attack was an intervening unforeseeable event that would supersede MPB's negligence as the cause of Nichols's injuries. I begin with the issue of duty.

## A. Duty to Protect

Under New Hampshire law, owners and occupiers of land have a duty to exercise reasonable care in the maintenance and operation of their property. Oulette v. Blanchard, 116 N.H. 552, 557 (1976). In general, however, "a person has no affirmative duty to aid or protect another," Marquay v. Eno, 662 A.2d 272, 278 (N.H. 1995), and private citizens have no obligation to protect others from criminal attacks, Walls v. Oxford Management Co., 137 N.H. 653, 657 (1993). Nevertheless, a landlord may have a duty to use reasonable care in protecting a person from harm caused by third parties: (1) when a special relationship exists such as that between a common carrier and passenger, an innkeeper and a

6

guest, or a school and its students; (2) when the defendant creates or increases the risk of harm; (3) when a criminal attack is clearly foreseeable although not related to particular defects in the property; or (4) when the defendant voluntarily assumes a duty to protect by providing security. Id. at 657-59; see also Marquay, 662 A.2d at 279; Restatement (Second) Torts § 344. In addition, "an employer may be directly liable for damages resulting from the negligent supervision of its employee's activities."[1] Trahan-Laroche v. Lockheed Sanders, Inc., 657 A.2d 417, 419 (N.H. 1995).

In all negligence cases, the concepts of "'duty and foreseeability are inextricably bound together.'" Manchenton v. Auto Leasing Corp., 135 N.H. 298, 304 (1992) (quoting Corso v. Merrill, 119 N.H. 647, 651 (1979)). Thus, "[w]hether a duty exists in a particular case depends on what risks, if any, are reasonably foreseeable." Goodwin v. James, 134 N.H. 579, 583 (1991). An assumed duty to provide security is limited by the

---

[1] Nichols also raises the doctrine of respondeat superior as a source of MPB's duty to protect Nichols from an assault perpetrated by its employees. I note that respondeat superior, or vicarious liability, is not plead in the complaint. However, I need not address this argument because I have determined that the complaint is sufficient based on a different theory of liability.

extent of the undertaking.  <u>Walls</u>, 137 N.H. at 659.

The facts as alleged in the complaint establish that MPB hired a security service to protect Nichols and Pederson, discontinued the security, and then again hired a security company when hostility toward Nichols and Pederson increased. Those facts support Nichols's theory that MPB assumed a duty to provide adequate security for them while working in the building. Also, as MPB believed a security service was necessary, it was reasonably foreseeable that inadequate security could result in harm to Nichols or Pederson.

In addition, it appears to be undisputed that a labor problem existed at Split Ball Bearing due to MPB's decision to hire Aslan for custodial services and to lay off employees that performed those jobs.  Incidents preceded the attack, which indicated hostility from the employees, and MPB was aware of those incidents and aware of the need for security.  Because the attack occurred in the Split Ball Bearing building where employees had previously expressed hostility to Nichols and Pederson, and the attackers said that they had to get back in just before leaving Nichols, it is reasonable to infer that they were Split Ball Bearing employees going back to work, although the attackers remain unidentified.  Thus, the allegations also

8

support an inference that MPB either created or increased the risk of harm from hostile employees by hiring Aslan custodians to replace its own employees or that a criminal attack was clearly foreseeable given the escalation of events from harassment to turning the Aslan van over in the parking lot just ten days before the attack on Nichols. The facts could also support a theory that MPB failed to adequately supervise its employees.

Accordingly, the allegations sufficiently support a theory of a duty owed by MPB to Nichols to survive dismissal.

## B. Causation

To be liable in negligence for an injury, a party must not only have breached a duty owed to the injured party but also must have been the proximate or legal cause of the harm. Fish v. Homestead Woolen Mills, 134 N.H. 361, 364 (1991); White v. Schnoebelen, 91 N.H. 273, 274 (1941). Proximate or "legal causation focuses on the mechanical sequence of events that comprises causation in fact." Island Shores Estates Condominium Ass'n v. Concord, 136 N.H. 300, 304 (1992). "A defendant's conduct is a proximate cause of an individual's injury if it is 'a substantial factor in bringing about the harm.'" Demetracopoulos v. Wilson, 138 N.H. 371, 377 (1994) (quoting Pillsbury-Flood v. Portsmouth Hospital, 128 N.H. 299, 304

9

(1986)).

MPB asserts that even if it had a duty to protect Nichols and if the attack occurred in part because of its failure to protect him, it is nevertheless not liable because the criminal attack was an intervening cause of the harm.  To absolve a defendant of liability, an intervening event must not be reasonably foreseeable.  Weldy v. Town of Kingston, 128 N.H. 325, 332 (1986).  In this case, foreseeability depends upon the inferences drawn from the incidents and MPB's actions prior to the attack as is addressed in the context of MPB's duty to protect Nichols.  See Island Shores Estates, 136 N.H. at 304 ("The concepts of duty and legal causation are closely related and must be considered together.")  Given the level of hostility displayed by the MPB employees and the increasing violence of their actions, it would not have been unreasonable to foresee an attack on an Aslan employee under these circumstances.  Thus, Nichols's allegations sufficiently state the causation element.

Because I have found no fatal deficiency in the pleading, MPB's motion to dismiss must fail.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to dismiss, (document no. 6) is denied.

SO ORDERED.

                                    _____
                                    Paul Barbadoro
                                    United States District Judge


February 26, 1996

cc:   Kimberly Kirkland, Esq.
      Robert C. Dewhirst, Esq.

11